ORIGINAL

ECF

FILED
SEP 2 9 2003
U.S. COURT OF FEDERAL CLAIMS

UNITED STATES COURT OF FEDERAL CLAIMS

BEN B. FLOYD, TRUSTEE
of the Bankruptcy Estate of
Gold Line Refining, Ltd.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

No. 03-2245C

## COMPLAINT

For its Complaint, Ben B. Floyd, Trustee of the Bankruptcy Estate of Gold Line Refining, Ltd. (hereinafter "Gold Line"), alleges as follows:

## INTRODUCTION

1. Gold Line entered a series of contracts with the United States Government for the purchase of military jet and marine fuels.

2. The contracts contained a price adjustment clause that permitted the Government to change the price it paid for the fuels.

3. In a series of decisions, the United States Court of Appeals for the Federal Circuit and the Court of Federal Claims held that the Government's price adjustment clause was illegal. *Barrett Refining Corp. v. United States*, 242 F.3d 1055 (Fed. Cir. 2001); *Phoenix Petroleum Co. v. United States*, No. 98-5124, 1999 U.S. App. LEXIS 16939 (Fed. Cir. July 23, 1999); *Tesoro Hawaii Corp. v. United States*, No. 02-704C (Fed. Cl. Sept. 15, 2003); *Hermes Consolidated, Inc. v. United States*, No. 02-1460C, 2003 U.S. Claims LEXIS 237 (Fed. Cl. Aug. 7, 2003);

*Calcasieu Refining Co. v. United States*, No. 02-1219C (Fed. Cl. July 31, 2003); *Berry Petroleum Co. v. United States*, No. 02-1462C (Fed. Cl. June 10, 2003); *Phoenix Petroleum Co. v. United States*, No. 97-315C (Fed. Cl. Apr. 30, 2003); *La Gloria Oil & Gas Co. v. United States*, 56 Fed. Cl. 211 (2003); *Gold Line Refining, Ltd. v. United States*, 43 Fed. Cl. 291, 296 (1999); *Pride Cos., L.P. v. United States*, No. 95-597C, 2000 US Claims LEXIS 213 (Fed. Cl. May 10, 2000); *Barrett Refining Corp. v. United States*, 42 Fed. Cl. 128, 130 (1998); *MAPCO Alaska Petroleum, Inc. v. United States*, 27 Fed. Cl. 405 (1992).

4. The Government profited from its illegal price adjustment clause by materially underpaying Gold Line and then denied Gold Line's claim for relief.

5. Gold Line seeks here to be made whole for the Government's violation of the law.

**THE PARTIES**

6. Plaintiff, Ben B. Floyd, Trustee, is the representative of Gold Line's bankruptcy estate and has the capacity to sue and to be sued, including to bring and to maintain this action. 11 U.S.C. § 323(a) and (b). On August 8, 1997, Gold Line filed a bankruptcy under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, Case No. 97-48184. In 1999, Gold Line's case was converted to Chapter 7. Thereafter, Ben B. Floyd was appointed Trustee of Gold Line's bankruptcy estate pursuant to 11 U.S.C. § 702(d) and Rule 2003 of the Federal Rules of Bankruptcy Procedure.

7. Prior to its bankruptcy, Gold Line operated a petroleum refinery located in Lake Charles, Louisiana with a rated processing capacity of 27,600 barrels per day.

8. At the time of contracting and at all times relevant to this Complaint, Gold Line was a small disadvantaged business ("SDB") within the meaning of the Small Business Act, 15 U.S.C. §§ 631, *et seq.*, applicable sections of the Armed Services Procurement Act, 10 U.S.C. §§ 2302, *et seq.*, and the Department of Defense Supplement to the Federal Acquisition Regulation (DFARS), 48 C.F.R. Part 219.

9. Defendant is the United States acting, *inter alia*, through the Defense Energy Support Center ("DESC"). DESC is part of the Defense Logistics Agency, which is part of the Department of Defense. DESC previously was known as the Defense Fuel Supply Center ("DFSC").

## JURISDICTION

10. This Court has jurisdiction to entertain this action pursuant to 28 U.S.C. § 1491 (2002) and 41 U.S.C. §§ 601-13 (2002).

## STATEMENT OF THE CASE

### The Contracts

11. From at least 1980 to 1999, DESC was the largest purchaser of fuel in the United States and the sole purchaser and user of military grade fuels. During this period, DESC purchased over $90 billion of military fuel. By virtue of DESC's market position, DESC had substantial market power and substantial ability to affect the prices it paid for military fuels.

12. From 1991 to 1994, Gold Line and DESC entered into seven long-term contracts for the purchase of military jet and marine fuels.

13. The contracts provided for the purchase of three different types of military fuels: (a) JP-4, a naphtha-based jet fuel; (b) JP-8, a kerosene-based jet fuel; and (c) F-76, a marine diesel fuel.

14. JP-4, JP-8, and F-76 are manufactured to military specifications. There is no commercial market for JP-4, JP-8, or F-76.

15. Gold Line's contracts contained DESC's standard price adjustment clause, Clause B19.33, Economic Price Adjustment-Published Market Price (Domestic Bulk). Clause B19.33 permitted DESC to change the monthly price it paid Gold Line for the jet and marine fuels.

16. DESC has acknowledged at least two authorized purposes for its price adjustment clause: (a) to protect DESC and Gold Line against market fluctuations, and (b) to ensure that the prices DESC paid Gold Line for the fuel under the long-term contracts reflected at least fair market value.

17. In preparing its offer for each of the contracts, Gold Line relied on Clause B19.33 to protect it from market fluctuations. As required by Clause B19.33, Gold Line warranted to DESC that its prices did not include any contingency allowance to cover possible increases in raw material costs and fuel prices.

18. Clause B19.33 established a two-part system to pay Gold Line for fuel deliveries. First, Gold Line received an interim monthly price computed according to a privately-published index known as Oil Price Information Service ("OPIS"). Some months after the OPIS interim price was paid, DESC computed and paid the final monthly price (for the same fuel delivery) using an official Department of Energy ("DOE") publication entitled Petroleum Marketing Monthly ("PMM"). The interim price under OPIS and the final price under PMM usually were different.

19. Contrary to the acknowledged purposes of DESC's price adjustment clause, DOE did not design or intend for PMM to be used to set or adjust prices in response to market fluctuations. PMM did not reflect the fair market value of the fuel DESC purchased.

20. DESC used PMM in its price adjustment clause in contravention of the acknowledged purposes of the clause. DESC knew that PMM was not designed to set or adjust prices in response to market fluctuations and did not reflect fair market value.

21. As a result of DESC's use of PMM in Clause B19.33, DESC paid Gold Line prices for fuel that were materially below fair market value.

22. DESC's economic price adjustment clause, B19.33, violated Federal Acquisition Regulation ("FAR") Subpart 16.2 and was illegal. In a series of decisions, the United States Court of Appeals for the Federal Circuit and the Court of Federal Claims held that Clause B19.33 violated law and regulation because it did not base price adjustments on a supplier's own established prices or costs. *Barrett Refining Corp. v. United States*, 242 F.3d 1055 (Fed. Cir. 2001); *Phoenix Petroleum Co. v. United States*, No. 98-5124, 1999 U.S. App. LEXIS 16939 (Fed. Cir. July 23, 1999); *Tesoro Hawaii Corp. v. United States*, No. 02-704C (Fed. Cl. Sept. 15,

2003); *Hermes Consolidated, Inc. v. United States*, No. 02-1460C, 2003 U.S. Claims LEXIS 237 (Fed. Cl. Aug. 7, 2003); *Calcasieu Refining Co. v. United States*, No. 02-1219C (Fed. Cl. July 31, 2003); *Berry Petroleum Co. v. United States*, No. 02-1462C (Fed. Cl. June 10, 2003); *Phoenix Petroleum Co. v. United States*, No. 97-315C (Fed. Cl. Apr. 30, 2003); *La Gloria Oil & Gas Co. v. United States*, 56 Fed. Cl. 211 (2003); *Gold Line Refining, Ltd. v. United States*, 43 Fed. Cl. 291, 296 (1999); *Pride Cos., L.P. v. United States*, No. 95-597C, 2000 US Claims LEXIS 213 (Fed. Cl. May 10, 2000); *Barrett Refining Corp. v. United States*, 42 Fed. Cl. 128, 130 (1998); *MAPCO Alaska Petroleum, Inc. v. United States*, 27 Fed. Cl. 405 (1992).

23. DESC profited from violating the law by paying Gold Line materially less than fair market value for the fuel DESC purchased.

**Gold Line's Certified Claim**

24. Pursuant to the Contract Disputes Act ("CDA"), on November 4, 2003, Gold Line submitted a certified claim to the Contracting Officer seeking an equitable adjustment in the amount of $24,649,316 plus interest to compensate it for the underpayments resulting from the operation of Clause B19.33 under the following contracts: DLA600-91-D-0550, DLA600-92-D-0483, DLA600-92-D-0526, DLA600-93-D-0500, DLA600-93-D-0562, DLA600-93-D-0584, and DLA600-94-D-0478.

25. On April 10, 2003, the Contracting Officer issued a final decision on Gold Line's claim. The Contracting Officer denied Gold Line's claim in its entirety.

26. Pursuant to the CDA, Gold Line hereby timely files suit upon and appeals DESC's April 10, 2003 final decision denying Gold Line's claim.

**COUNT I**
**(Illegality)**

27. Gold Line realleges and incorporates by reference the allegations set forth in paragraphs 1 through 26 above.

28. DESC knowingly awarded and administered each of Gold Line's contracts in violation of law and regulation, *inter alia*, by using an economic price adjustment clause, B19.33, which was illegal and which resulted in prices that were materially below fair market value.

29. DESC's violation of law and regulation damaged Gold Line.

30. Gold Line is entitled to recover the fair market value of the fuel it delivered to DESC in an amount of at least $24,649,316 plus interest, by way of reformation, *quantum valebant*, or rescission and restitution.

**COUNT II**
**(Breach of Contract)**

31. Gold Line realleges and incorporates by reference the allegations set forth in paragraphs 1 through 30.

32. DESC's compliance with law and regulation in awarding and administering the contracts was a material condition of the contracts upon which Gold Line reasonably relied in entering the contracts.

33. The use of an economic price adjustment clause that protected DESC and Gold Line against market fluctuations, and ensured that the prices DESC paid Gold Line for fuel under the long-term contracts reflected at least fair market value was a material condition of the contracts upon which Gold Line reasonably relied in entering the contracts.

34. In contravention of DESC's contractual obligations, DESC violated law and regulation in awarding and administering the contracts.

35. In contravention of DESC's contractual obligations, DESC based price adjustments on PMM. PMM was not designed or intended to be used to set or adjust prices. As a result, the prices paid by DESC materially were below fair market value.

36. DESC's violation of law and regulation constituted a breach of contract.

37. DESC's use of the PMM to set or adjust prices under the contracts constituted a breach of contract.

38. DESC's breach of contract damaged Gold Line.

39. Gold Line is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $24,649,316 plus interest, by way of rescission and restitution, or damages.

**COUNT III**
**(Implied-In-Fact Contract)**

40. Gold Line realleges and incorporates by reference the allegations set forth in paragraphs 1 through 39.

41. DESC knowingly awarded and administered each of Gold Line's contracts in violation of law and regulation.

42. DESC's violation of law and regulation rendered at least the price terms of Gold Line's contracts invalid and unenforceable.

43. DESC's violation of law and regulation damaged Gold Line.

44. There is an implied-in-fact contract to pay Gold Line the fair market value of the fuel Gold Line delivered to DESC.

45. Gold Line is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $24,649,316 plus interest by way of an implied-in-fact contract and/or *quantum valebant*.

**COUNT IV**
**(Failure of Consideration And Frustration of Purpose)**

46. Gold Line realleges and incorporates by reference the allegations set forth in paragraphs 1 through 45.

47. DESC's compliance with law and regulation in awarding and administering the contracts was a material part of the consideration upon which Gold Line reasonably relied in entering the contracts and a material purpose of the contracts.

48. The use of an economic price adjustment clause that protected DESC and Gold Line against market fluctuations, and ensured that the prices DESC paid Gold Line for the fuel under the long-term contracts reflected at least fair market value was a material part of the consideration upon which Gold Line reasonably relied in entering the contracts and a material purpose of the contracts.

49. DESC violated law and regulation in awarding and administering the contracts.

50. DESC based the price adjustments on PMM. PMM was not designed or intended to be used to set or adjust prices. The use of PMM resulted in prices that were materially below fair market value.

51. DESC's violation of law and regulation constituted a failure of consideration and frustrated the purpose of the contracts.

52. DESC's use of PMM constituted a failure of consideration and frustrated the purpose of the contracts.

53. This failure of consideration and frustration of the purpose of the contracts damaged Gold Line.

54. Gold Line is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $24,649,316 plus interest, by way of rescission and restitution.

## COUNT V
## (Mistake)

55. Gold Line realleges and incorporates by reference the allegations set forth in paragraphs 1 through 54 above.

56. Gold Line entered and performed the contracts with the intent that they comply with law and regulation. This was a material condition upon which Gold Line reasonably relied in entering the contracts.

57. Gold Line entered and performed the contracts with the intent that the standards used to make price adjustments were designed or intended to be used to set or adjust prices. This was a material condition upon which Gold Line reasonably relied in entering and performing the contracts.

58. DESC did not comply with law and regulation in awarding and administering the contracts.

59. DESC based price adjustments on PMM. PMM was not designed or intended to be used to set or adjust prices. The use of PMM resulted in prices that were materially below fair market value.

60. If DESC did not knowingly award and administer contracts in violation of law and regulation, then DESC must be presumed to have intended to award and administer contracts in accordance with law and regulation.

61. If DESC did not know that PMM was not designed or intended to be used to set or adjust prices, then DESC must be presumed to have used PMM with the intent that it was designed or intended to be used to set or adjust prices.

62. As the result of a mistake relating to DESC's compliance with law and regulation, DESC and Gold Line entered and performed the contracts in violation of law and regulation.

63. As a result of a mistake, DESC and Gold Line entered and performed the contracts using PMM to set or adjust prices.

64. If DESC and Gold Line had not been mistaken, DESC and Gold Line would not have entered and performed contracts in violation of law and regulation.

65. If DESC and Gold Line had not been mistaken, DESC and Gold Line would not have entered and performed contracts using PMM to set or adjust prices.

66. Alternatively, if DESC was not mistaken in awarding and administering contracts in violation of law and regulation, then DESC knew or should have known of Gold Line's mistake and failed to meet its duty timely to disclose this mistake to Gold Line.

67. If DESC was not mistaken in awarding and performing contracts using PMM to set or adjust prices, then DESC knew or should have known of Gold Line's mistake and failed to meet its duty timely to disclose this mistake to Gold Line.

68. The parties' mutual mistake and/or DESC's failure to disclose Gold Line's unilateral mistake damaged Gold Line.

69. Gold Line is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $24,649,316 plus interest, by way of reformation, or rescission and restitution.

**COUNT VI**
**(Misrepresentation)**

70. Gold Line realleges and incorporates by reference the allegations set forth in paragraphs 1 through 69.

71. DESC knowingly awarded and administered Gold Line's contracts in violation of law and regulation.

72. DESC knowingly based price adjustments on PMM, which was not designed or intended to be used to set or adjust prices. The use of PMM resulted in prices that were materially below fair market value.

73. In awarding and administering the contracts, DESC, through the contracting officer and others, misrepresented and otherwise failed to disclose its violation of law and regulation.

74. In awarding and administering the contracts, DESC, through the contracting officer and others, misrepresented and otherwise failed to disclose that the PMM was not designed or intended to be used to set or adjust prices.

75. Gold Line reasonably relied upon DESC's material and/or fraudulent misrepresentations as an inducement to enter the contracts.

76. DESC's material and/or fraudulent misrepresentations damaged Gold Line.

77. Gold Line is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $24,649,316 plus interest, by way of rescission and restitution, damages, or reformation.

**PRAYER FOR RELIEF**

WHEREFORE, Ben B. Floyd, Trustee, requests judgment as follows:

1. $24,649,316 plus interest, or such further amount as established prior to judgment;

2. Such other and further relief, including attorney fees, as the Court may deem just and equitable.

Respectfully submitted,

Ronald H. Uscher
Bastianelli, Brown & Kelley, Chtd.
Two Lafayette Centre
1133 21st Street, N.W.
Suite 500
Washington, D.C. 20036
(202) 293-8815
(202) 293-7994 (fax)

Counsel for Ben B. Floyd, Trustee of the
Bankruptcy Estate of Gold Line Refining, Ltd.

Dated: September 29, 2003

M:\floyd\002\Complaint